TIREY L. HUME AND MARGARET K. HUME, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HUME INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hume v. Commissioner
Docket Nos. 8017-76, 8095-79.
United States Tax Court
T.C. Memo 1982-525; 1982 Tax Ct. Memo LEXIS 220; 44 T.C.M. (CCH) 1108; T.C.M. (RIA) 82525; September 14, 1982. Tirey L. Hume, pro se, and as an officer of Hume Industries, Inc.William S. Miller, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:* Respondent determined deficiencies in Federal income tax, personal holding company tax, and additions to tax under section 6653(a) as follows: [1]
Petitioner(s)
Year
Docket No.
Deficiency
Tirey L. Hume
and Margaret
K. Hume
1972
8017-76
$7,994.00
Hume Industries,
Inc.
1973
8095-79
4,236.04
Hume Industries,
Inc.
1974
8095-79
641.20
Hume Industries,
Inc.
1975
8095-79
617.69
*222 Personal
Holding Company
Additions to
Tax Pursuant to
Tax Pursuant
Petitioner(s)
Section 541
to Section 6653(a)
Tirey L. Hume
and Margaret
K. Hume
$400.00
Hume Industries,
Inc.
10,655.05
211.80
Hume Industries,
Inc.
1,960.14
Hume Industries,
Inc.
22,608.98
By agreement of the parties and by order of the Court, these cases have been consolidated for purposes of trial, briefing and opinion. After concessions by the parties, the issues to be decided are: (a) In Docket No. 8017-76:
Whether petitioner Tirey L. Hume [2] (hereinafter referred to as "Mr. Hume" or "petitioner") understated his taxable income for the year 1972 by failing to report the following items: (1) Dividends paid by Columbia Forge and Machine Works, Inc. to Mr. Hume in the amount of $15,067, [3]
(2) Undistributed taxable income of Columbia Forge and *223 Machine Works, Inc. totaling $9,121 for its fiscal year ending January 31, 1972, and (3) Compensation paid to Mr. Hume by Columbia Forge and Machine Works, Inc. in 1972 in the amount of $2,500. (b) In Docket No. 8095-79:
(1) Whether Hume Industries, Inc. (hereinafter "Hume Industries") was entitled to a deduction for the depreciation of corporate assets in 1973 totaling $1,882.58, (2) How much taxable gain was realized by Hume Industries in 1973, 1974 and 1975 with respect to the sale of corporate assets, (3) Whether Hume Industries correctly reported dividend income from Columbia Forge and Machine Works, Inc. in 1973 and 1975 [4], (4) Whether Hume Industries qualified as a personal holding company *224 under section 541 during 1973, 1974 and 1975, and (5) Whether Hume Industries is liable for additions to tax under section 6653(a) for 1973. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Tirey L. Hume and Margaret K. Hume filed their 1972 joint income tax return with the Internal Revenue Service Center in Ogden, Utah. Hume Industries filed its corporate income tax returns for calendar years 1970 through 1975 with respondent's same Service Center. Tirey L. Hume and Margaret K. Hume resided in Vancouver, Washington at the time they filed their petition in this case. The corporate offices of Hume Industries were also located in Vancouver, Washington, at the time its petition was filed. In late 1946, Columbia Forge Works, Inc. was incorporated under the laws of the State of Oregon. On February 15, 1957, Columbia Forge Works, Inc. changed its name to Hume Industries, and discontinued the operation of its welding and forging business. At all times relevant herein, Mr. Hume was the sole shareholder of Hume Industries. At the same time as the above change of name, a new corporation, Columbia Forge and Machine Works, Inc. ("Columbia"), was organized *225 and incorporated under the laws of the State of Oregon. At the first meeting of the Board of Directors of Columbia, Mr. Hume was elected secretary-treasurer of that corporation. Later, Columbia elected to be taxed as a qualified small business corporation under the provisions of section 1371, et seq. (Subchapter S of the Internal Revenue Code); for the years 1972 and 1973, it so filed its tax returns, on the basis of a fiscal year ending January 31. Its status as a Subchapter S corporation in the years before us has not been challenged by respondent. Three hundred shares of stock were issued by Columbia, with Mr. Hume, Louis McMullen and Jack E. Orr each receiving 100 shares. Columbia is the successor operating company to Hume Industries. Although it discontinued the operation of its forging and welding business, Hume Industries did continue to own the land, plant and machinery previously owned and used by it under the name of Columbia Forge Works, Inc. Upon Columbia's commencement of business, Hume Industries permitted Columbia to use its land, plant and machinery without charge from February 15, 1957, to June 30, 1958. Thereafter, Hume Industries rented these assets to *226 Columbia. In 1970, Columbia discontinued renting assets from Hume Industries, but continued the operation of its business with other assets acquired since its incorporation. The record establishes that petitioner was the shareholder of record of 100 shares of Columbia stock from 1957 until these shares were sold to The Skookum Company, Inc. on May 31, 1975. The original stock certificate of Columbia issued to petitioner for his 100 shares was used to transfer said shares from petitioner to Skookum in May, 1975, and was endorsed by petitioner as owner. Under date of April 7, 1972, so-called "consent minutes" of Columbia were prepared to authorize the payment of a dividend by the Board of Directors without the necessity of holding a formal directors' meeting. Such consent minutes required the signatures of all Columbia's directors, including Mr. Hume, under applicable Oregon law and Columbia's by-laws. Upon the latter's refusal to sign, the dividend action was aborted and no dividend was paid. On April 8, 1972, the Board of Directors of Columbia declared a cash dividend of $90 per share. In addition, the Board declared a separate $72.08 per share dividend; the proceeds *227 from this latter dividend were applied against the outstanding indebtedness which the shareholders (including Mr. Hume) owed to Columbia. Both dividends were paid to or for Mr. Hume in 1972. At the April 18, 1972, meeting, Mr. Hume was present and voted as a director against the above dividend resolutions. The corporate tax returns of Columbia for its fiscal years 1972 and 1973 showed Mr. Hume as the owner of one-third of its stock, or 100 shares, and the 1972 return showed Mr. Hume as an officer. The record does not show that dividends were paid by Columbia in 1973 or 1974. A dividend was paid by Columbia in early 1975. Petitioner caused Hume Industries to report the 1972 distribution in its calendar year 1973 return, in the amount of $16,208.00, [5] and the 1975 distribution in its 1975 return, in the amount of $31,000. [6]
*228 Columbia paid Mr. Hume $2,500 as compensation for services as its corporate secretary in January, 1972, and disclosed the same in its fiscal 1972 tax return, which also reported $9,120.81 as petitioner's share (as a one-third shareholder) of its undistributed taxable income for that year. Neither of these items, nor the April, 1972, dividend distribution was reported by petitioner in his 1972 joint return. Upon audit, respondent determined that the $2,500 received by petitioner as compensation in 1972 was taxable to him in that year. Respondent also determined that, as the owner of one-third of the outstanding stock of Columbia, (a Subchapter S corporation) petitioner was taxable upon one-third of its undistributed taxable income for its fiscal year ending January 31, 1972, in petitioner's calendar year 1972, pursuant to section 1373; and respondent further determined that petitioner was taxable in 1972 upon $15,067 of the Columbia dividend distribution made in April of that year. [7] Respondent made no corresponding adjustment to the income of Hume Industries for 1973, where the same dividend had been reported in full, nor to the income of Hume Industries for 1975, where a *229 further dividend from Columbia had been reported. Respondent did determine, however, that Hume Industries qualified as a personal holding company for 1973, 1974 and 1975, "As over 60 percent of your adjusted gross income reported * * * was from dividends and interest * * *," and accordingly determined deficiencies of personal holding company taxes under section 541. Mr. Hume was the true owner of one-third of the outstanding shares of Columbia from at least January 1, 1972, until May 31, 1975. Less than 60 percent of the adjusted ordinary gross income of Hume Industries for 1973 was personal holding company income. More than 60 percent of its adjusted ordinary gross income for 1974 and 1975 was personal holding company income. In its corporate tax return for 1973, Hume Industries reported the sale, on the installment basis, of certain land, buildings, furniture and fixtures. In computing its gain upon this sale, Hume Industries claimed a cost basis in the land *230 of $5,073.61, selling expense of $5,315.00, and a remaining adjusted cost basis in the depreciable assets of $36,432.90. The tax return stated that the depreciable assets involved in this sale had been acquired at various times between 1946 and 1951. In its tax return for 1951, Hume Industries claimed that these assets had remaining useful lives between 18 and 19 years. In its tax return for 1952, Hume Industries claimed that these assets had remaining lives of 17 and 18 years. In its tax return for 1970, Hume Industries claimed depreciation based upon a remaining useful life of 10.4 years. In its tax return for 1971, it claimed depreciation based upon a remaining useful life of 3.65 years. In its tax return for 1972, it claimed a remaining estimated useful life of these assets of 2.9 years. In its tax return for 1973, the year of sale, Hume Industries claimed that the undepreciated furniture and fixtures had a remaining life of 40 years. Hume Industries also claimed a depreciation deduction with respect to said assets in 1973 of $1,882.58. Upon audit, respondent determined that the depreciable assets involved in the above sale had a remaining cost basis of zero, since all *231 depreciation which was allowed or allowable with respect thereto had been incurred in prior years. Respondent allowed the cost basis of the land and the selling expense, as claimed in the Hume Industries return, and recomputed Hume Industries' gain upon the sale accordingly, resulting in additions to Hume Industries' income for 1973, 1974 and 1975 of $9,108, $2,914.56 and $3,089.44 respectively. Respondent also disallowed the deduction for depreciation, in the amount of $1,882.58, claimed by Hume Industries for 1973. For the year 1973, respondent determined additions to Hume Industries' resulting income tax deficiencies under section 6653(a), on the grounds that Hume Industries' underpayment of tax was due to negligence or intentional disregard of rules and regulations. OPINION Most of the issues to be decided in these consolidated cases revolve around a factual dispute: whether petitioner owned 100 shares of Columbia stock during calendar years 1972-1975. Respondent contends that, as a stockholder in Columbia during 1972, petitioner was required to report dividends paid with respect to these stockholdings on his tax return for that year. The dividends at issue here consist *232 of a $9,000 cash dividend and a $7,208 dividend resulting from the cancellation of petitioner's indebtedness to the corporation. [8] Respondent further asserts that Mr. Hume is subject to tax on his share (1/3) of undistributed taxable income of Columbia for the corporation's fiscal tax year ending January 31, 1972. Finally, respondent contends that petitioner received $2,500 during 1972 from the corporation which represented compensation for services rendered to Columbia. At the same time, and while contending that petitioner made no valid transfer of his Columbia stock to Hume Industries which was effective in the years before us, respondent has treated the dividends paid by Columbia in the April 1972 - May 1975 period as income of Hume Industries, both for the purpose of computing the income tax of Hume Industries as well as for classifying it as a personal holding company and asserting the additional tax under section 541. Petitioner denies that he received any dividend income from Columbia in 1972. The main contention raised by *233 petitioner is that he transferred his 100 shares of Columbia stock to Hume Industries during 1970, and repurchased them, at the same price, in 1975 just prior to his sale of the same shares to another corporation. Mr. Hume admits that he received a $9,000 cash dividend during 1972, but contends that he accepted this check solely in his capacity as the president of Hume Industries, and not in his individual capacity. Further, petitioner denies that he received a separate $7,208 dividend from Columbia via debt cancellation. Mr. Hume also disputes the determination made by the respondent that attributes to him a proportionate share of Columbia's undistributed taxable income, as a Subchapter S corporation, for its fiscal year ending January 31, 1972, under section 1373.Petitioner argues that since he transferred his stock in Columbia to a corporation (Hume Industries), Columbia's Subchapter S status terminated prior to 1972. Section 1371(a). As a consequence, he contends that the individual stockholders are not subject to tax for any income resulting from the operation of Columbia's business in 1972. Finally, petitioner denies that he received $2,500 from Columbia during 1972 *234 for compensation for services rendered. Mr. Hume admits the receipt of a $2,500 check from Columbia during this year, but contends that this was dividend income which he accepted only in his capacity as the President of Hume Industries. Before considering other issues raised in respondent's notices of deficiency, we first address the issues which depend upon the factual question of the ownership of the Columbia stock. The question whether a taxpayer has made a valid transfer of property for Federal tax purposes is an issue of fact. Wilson v. Commissioner,560 F.2d 687, 690-691 (5th Cir. 1977), affg. a Memorandum Opinion of this Court. Special scrunity is required when, as here, the question of stock ownership involves a Subchapter S corporation. Beneficial ownership rather than technical legal ownership will determine who is the actual shareholder, especially in cases involving qualification under Subchapter S. Cf. Kean v. Commissioner,51 T.C. 337 (1968), revd. on other issues 469 F.2d 1183 (9th Cir. 1972); section 1.1373-1(a)(2), Income Tax Regs. *235 Objective facts with respect to acts and events occuring both before and after such a "transfer" are relevant when making this determination, see Hook v. Commissioner,58 T.C. 267 (1972). Although petitioner claims that he transferred his stock in Columbia to Hume Industries during 1970, there is not sufficient evidence in the record to establish this fact. Tax returns filed by Hume Industries for calendar years 1972, 1973, 1974 and 1975 could give rise to an inference that the stock in Columbia was "transferred" to Hume Industries during 1972. Minutes of a special meeting of Hume Industries Board of Directors (attendance of directors not disclosed) indicate that the corporation sold 100 shares of Columbia stock to petitioner on February 5, 1975 for $1,000, and the Hume Industries' 1975 tax return reported the "sale." Yet this evidence is both incomplete and inconclusive, and, considering that Mr. Hume, as sole shareholder and president of Hume Industries, was in complete control of its corporate minutes and tax returns (and what they disclosed), they must be examined with some caution. Contrary evidence not originating with Mr. Hume, on the other hand, strongly *236 indicates that petitioner was the owner of the 100 shares of Columbia stock from 1957 until these shares were sold on May 31, 1975. Mr. Hume was elected the Secretary-Treasurer of Columbia in 1957, and there is no suggestion in the record that he ever relinquished this position. The Columbia tax return for 1972 so describes him. At Columbia's April 18, 1972, Board of Directors Meeting, Mr. Hume was present when the status of the corporation under Subchapter S was discussed and he voted as a director. No mention was made of the "transfer" of 100 shares of Columbia stock to Hume Industries during this meeting, and the attorney and acting secretary of Columbia during the period 1971 to May 31, 1975, who attended Columbia Board of Directors' meetings and prepared their minutes, testified that he had no knowledge of any purported transfer of Columbia stock by Mr. Hume to Hume Industries in this period. The very evidence that might suggest that there was a transfer of stock to Hume Industries during 1972 (not 1970), also strongly suggests that petitioner had every intention of retaining the beneficial ownership of such stock. Petitioner acquired his 100 shares of stock in 1957 for *237 $1,000. The first indication that petitioner might have "transferred" his Columbia stock to Hume Industries is found on the corporate balance sheets on Hume Industries 1972 tax return. On Schedule L, listed under other investments, an unexplained $1,000 appears on Hume Industries' end-of-year balances. This figure recurs on the balance sheets in Hume Industries' returns until 1975, when the stock was allegedly sold back to Mr. Hume for the original purchase price of $1,000. The fact that Mr. Hume acquired this stock in 1957 for $1,000 and this same stock was "sold" to Hume Industries in 1972 for $1,000, and then "reacquired" by Mr. Hume in February of 1975 for $1,000 strongly suggests that petitioner intended to retain beneficial ownership throughout this period, when viewed in light of the stipulated fact that 100 shares were sold by Mr. Hume to the Skookum Company, Inc., some four months after for $117,333. [9]
Documents normally submitted into evidence to establish the sale of stock are noticeably missing from the record. No minutes, contract, *238 or endorsed certificate were submitted to establish the transfer of 100 shares of Columbia stock to Hume Industries during 1970, or during any other time. No books or records of Hume Industries, other than its tax returns were put in evidence, nor did any representative from Hume Industries, including petitioner, or Columbia, testify to the sale of this stock, first to Hume Industries in 1970 (or 1972), and then back to Mr. Hume in 1975. [10] It is curious that Mr. Hume presented no evidence that the 1972 and 1975 Columbia dividends, admittedly received by him, went into the Hume Industries' bank account. The record supports our finding that Mr. Hume was both the beneficial and actual owner of 100 shares of Columbia stock from 1957 until this stock was sold to the Skookum Company, Inc. on May 31, 1975. This being true, the following holdings inevitably result: A) the 1972 and 1975 Columbia dividends, admittedly received by Mr. Hume in those years, were properly reportable for tax purposes by him, and were erroneously reported by Hume Industries in its returns for 1973 and 1975 *239 respectively; B) there is nothing in this record to cause any disqualification of Columbia as a Subchapter S corporation for its fiscal year 1972, so that its undistributed taxable income was properly reportable by its shareholders, in proportion to their stockholdings, as a dividend received on January 31, 1972, section 1373, and respondent's determination on this point is sustained; C) the gross income of Hume Industries for 1973 and 1975, as reported, must be reduced by $16,208 and $31,000, respectively, constituting the Columbia dividends erroneously reported; [11]
D) after the elimination of Columbia dividends from Hume Industries' 1973 and 1975 gross income, as above, and there being no other adjustments to its ordinary gross income nor its adjusted ordinary gross income, as those terms are defined in section 543(b), we hold that respondent's determination that Hume Industries was subject to personal holding company tax for 1974 and 1975 is sustained, but that such determination for 1973 is disapproved, *240 based upon our findings that less than 60% of its adjusted ordinary gross income for 1973, but more than 60% for 1974 and 1975, was personal holding income. [12]Sections 541, 542, 543. The amounts of resulting personal holding company tax should be determined as part of the recomputation herein under Rule 155. Respondent determined that $2,500 received by Mr. Hume from Columbia in 1972 constituted reportable salary income for that year. Petitioner admits that he received the money, although he claims he was not employed by Columbia during this period. He claims that this $2,500 was dividend income which he received on behalf of Hume Industries. Our finding concerning ownership of the Columbia stock disposes of this contention. The tax return filed by Columbia for *241 its fiscal year ending January 31, 1972, reported that it paid petitioner $2,500 as compensation for services rendered to the corporation in his capacity as its secretary. Respondent's determination is consistent with the evidence in the record, and is sustained. Respondent determined that certain depreciable assets sold by Hume Industries on the installment basis in 1973 were fully depreciated prior to that year, and respondent accordingly allowed no cost basis to Hume Industries with respect to the assets, increasing its reportable gains in 1973, 1974 and 1975 accordingly. Consistent therewith, respondent also disallowed the depreciation claimed on said assets in Hume Industries 1973 return. The evidence submitted at trial on this issue is suggestive that these assets were fully depreciated prior to 1973.Hume Industries estimated the remaining useful life of these assets in 1951 and 1952 to be about eighteen and seventeen years, respectively. Between 1970 and 1973, Hume Industries claimed different depreciable lives for apparently the same assets, varying widely from 2.9 years to 40 years. It is well-established that *242 the adjusted basis of assets must be reduced as these assets depreciate, regardless of whether the taxpayer claims a depreciation deduction in each tax year. United States v. Ludey,274 U.S. 295 (1927); section 1.1016-3(a), Income Tax Regs.
Ordinarily, respondent's statutory notice of deficiency carries with it a presumption of correctness which places the burden on the petitioner to show that the respondent's determination is erroneous. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). No evidence was presented at trial as to the useful life of the assets. We conclude that Hume Industries has not met its burden of proof on these issues, and we accordingly sustain respondent. The remaining issue that we must decide is whether Hume Industries is liable for additions to tax under section 6653(a) for calendar year 1973. Hume Industries failed to present any evidence with respect to this issue. The burden of proof is on the petitioner. Enoch v. Commissioner.57 T.C. 781, 802 (1972). *243 Petitioner has failed to carry his burden of proof, and we hold for the respondent. In accordance with this opinion, Decisions will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Cynthia Holcomb Hall who subsequently resigned from the Court. By order of the Chief Judge, this case was reassigned to Judge Jules G. Korner III↩. 1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 in effect during the years in issue. All references to rules are to the Rules of Practice and Procedure of this Court.↩
2. Margaret K. Hume is a petitioner herein solely by virtue of having filed a joint return with her husband.↩
3. Although petitioner received a $16,208 distribution from Columbia Forge and Machine Works, Inc. during 1972, respondent determined that only $15,067 of this was taxable dividend income.↩
4. Although not specifically pleaded by Hume Industries, this issue must be decided because of the positions of the parties in Mr. Hume's separate docket (which has been consolidated herewith) concerning the ownership of stock of Columbia Forge and Machine Works, Inc., the positions of the parties in the Hume Industries case involving its status as a personal holding company, and to achieve uniformity and consistency of our findings and holdings herein. See Rule 41(b).↩
5. Reported on Hume Industries' return as gross receipts rather than as dividends. ↩
6. Evidence in the record, in the form of a joint exhibit, shows an acknowledgement by Mr. Hume of the receipt of $22,666.67 in 1975 as a dividend from Columbia. The difference between this figure and the $31,000 reported by Hume Industries, apparently on account of the same dividend, is not explained.↩
7. Since the Columbia distribution to its shareholders exceeded its available earnings and profits, as reported, the taxable portion was ratably reduced by respondent with respect to petitioner, to $15,067.↩
8. Note that of the $16,208 distributed by Columbia during 1972, only $15,067 has been determined by the respondent to be dividend income.↩
9. Later reduced to $94,666.33 because of the admitted receipt by Mr. Hume of a Columbia dividend declared January 31, 1975.↩
10. Unadmitted allegations in pleadings and statements on brief are not evidence, Rule 143(b).↩
11. Such adjustment will also eliminate the special deductions under section 243 with respect to said dividends which were claimed by Hume Industries in its returns.↩
12. As adjusted by our findings and holdings herein, the Hume Industries "ordinary gross income" and "adjusted ordinary gross income," for purposes of sections 541-543, are as follows (per the Hume Industries' returns): ↩
1973
1974
1975
Ordinary Gross Income: Interest
$3,600.00
$3,216.00
Adjustments per
section 543(b) (2)
Adjusted Ordinary
gross income
3,600.00
3,216.00